Yongmoon Kim, Esq.
KIM LAW FIRM LLC
411 Hackensack Ave., Suite 701
Hackensack, NJ 07601
Telephone: (201) 273-7117
E-mail: ykim@kimlf.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSA M. WILLIAMS-HOPKINS, an individual, o/b/o herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> FAST FLASH MARKETING, LLC, a Florida limited liability company, doing business as DOLLARCONNECT.COM, <br> DOLLAR CONNECT, LLC, a Florida limited liability Company, doing business as DOLLARCONNECT.COM, <br> and JOHN DOES 1-100, unknown individuals or business entities, <br><br> Defendants. | CASE NO.: <br><br> **CLASS REPRESENTATION** |

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, Rosa M. Williams-Hopkins, an individual ("Ms. Williams-Hopkins" or "Class Representative"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, files this Complaint for Damages and Incidental Relief against Defendants, Fast Flash Marketing, LLC; and Dollar Connect, LLC, Florida limited liability companies, doing business as "DollarConnect.com" ("DollarConnect") and John Does 1-100, unknown individuals and/or business entities ("Unknown Lenders"):

# GENERAL ALLEGATIONS

## INTRODUCTION

1. This class action involves the illegal placement of unwanted text messages in contravention of 47 U.S.C. § 227, *et seq.*, known more commonly as the "Telephone Consumer Protection Act" ("TCPA") and the regulations of the Federal Communications Commission ("FCC") .

2. The Pew Research Center has reported 69% of cellular users who use text messaging receive unwanted text message spam with 25% of them on a weekly basis.[1] Plaintiff is one such person who regularly received text message spam. After a request to stop texting to no avail, Plaintiff has decided to bring the instant class action complaint alleging violations of the TCPA. Simply put, Plaintiff has filed the instant lawsuit in an effort to put an end to this form of text message spam and protect her fundamental right to privacy as well as the rights of the putative class members.

3. The wireless industry has aligned itself with consumer advocates in endorsing the FCC's efforts to restrain a "[p]otential Pandora's Box of spam." *Protecting Consumers by Stopping Text Spam*, Scott Bergmann, Senior Vice President, Regulatory Affairs, Cellular Telecommunications and Internet Association (Nov. 26, 2018).

4. In brief, Defendants have sent out thousands of unlawful text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendants have caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because

---

[1] Source: https://www.pewresearch.org/internet/2012/08/02/mobile-phone-problems/ (last visited November 26, 2020).

consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

5. In order to redress these injuries, Plaintiff, on behalf of herself and the proposed classes of similarly situated individuals described below, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendants have sent unwanted text messages in a manner which violates the right of privacy of the putative class members. Defendants continued to send these unwanted text messages even after Plaintiff and other putative class members requested that the offending texts stop. On behalf of the class, Plaintiff seeks an injunction requiring Defendants to cease all unlawful text messages and an award of statutory damages to the class members, together with costs and reasonable attorney's fees. All allegations contained herein are based upon information and belief of Plaintiff or the investigative efforts of the undersigned counsel.

## JURISDICTION

6. This Court has jurisdiction under the TCPA, 47 U.S.C. § 227 *et seq.,* and 28 U.S.C. §§ 1331, 1337.

## PARTIES

7. At all times material hereto, Plaintiff, Ms. Hopkins-Williams was *sui juris* and a resident of Paterson, New Jersey.

8. At all times material hereto, Fast Flash Marketing, LLC, and Dollar Connect, LLC ("DollarConnect") were Florida limited liability companies with its principal place of business in Boca Raton, Palm Beach County, Florida.

9. At all times material hereto, DollarConnect owned and operated a loan broker

business.

10. At all times material hereto, the Unknown Lenders were business entities conducting business activities in the State of Florida, and more particularly in Palm Beach County, Florida.

11. At all times material hereto, the DollarConnect was engaged in providing bulk texting services for businesses such as the Unknown Lenders.

12. The identity of the Unknown Lenders is currently unknown to Plaintiff.

13. Through discovery, the names of the Unknown Lenders will be obtained and Plaintiff shall amend her pleadings to properly name the Unknown Lenders.

14. Venue is proper in this district as a result of the performance of activities in this district by Defendants directed to Plaintiff, and Defendants doing business in this district. As described below, the Unknown Lenders contracted with DollarConnect in Palm Beach County to provide marketing services.

**OVERVIEW OF TEXT MESSAGING MARKETING INDUSTRY**

15. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

16. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

17. An "SMS message" is a text message directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made,

the recipient's cell phone rings, alerting him or her that a call is being received.

18. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes.[2] Conversely, the open rate for email in the finance industry is 21.56%.[3]

19. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

20. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

21. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

22. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009).

23. According to the findings of the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such automated calls are prohibited because, as Congress found, automated telephone calls are a greater

---

[2] Source: http://www.tatango.com/blog/sms-open-rates-exceed-99/ (Last visited: November 26, 2020).

[3] Source: https://mailchimp.com/resources/email-marketing-benchmarks/ (last visited: November 26, 2020).

nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See, In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (FC.C. June 26, 2003).

24. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See, In re Rules Implementing the Tel. Consumer Prot. Act of 1991,* 23 FCC Rcd. 559, 565 (F.C.C. Dec. 28, 2007).

25. The FCC specifically ruled that a consumer's prior express consent to receive future text messages may be revoked and texts sent after revocation violate the TCPA ("FCC Revoked Consent Order"). *In re SoundBite Commc'ns, Inc.,* 27 FCC Rcd. 15391 (F.C.C. Nov. 29, 2012).

26. Even before the FCC Revoked Consent Order that consent to receive a text message could be revoked, the Mobile Marketing Association declared in October 2012 in its *U.S. Consumer Best Practices for Messaging* that "[a]ny subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program ..." and "... if the subscriber sent STOP or STOP ALL to the short code, they opted out of all programs they were enrolled in on that short code."

### **DESCRIPTION OF BUSINESS MODEL OF DEFENDANTS**

27. DollarConnect is a lead generator for high-priced payday lenders.

28. According to its website, DollarConnect touts that

> DollarConnect.com is a for-profit advertising network. We receive compensation, in the form of referral fees, from the lenders and/or lending partners, aggregators, or other offers that we direct you to. Therefore, the amount of compensation provided, along with other factors, may impact which offer you are presented. The offer you receive may be coming from the company that bid the most for your

>information. DollarConnect.com does not always provide you with an offer with the best rates or terms. Our website does not include all companies or all available offers. We encourage you to research all available loans options to you.

*See*, https://www.dollarconnect.com/advertiser.aspx

29. The Unknown Lenders are the business partners who receive the loan referrals and on whose behalf the SMS messages—also known as text messages—are sent.

## FACTUAL ALLEGATIONS

30. Commencing in February 6, 2018 to July 30, 2019, Defendants sent to Ms. Williams-Hopkins multiple text messages with loan offers on behalf of the Unknown Lenders ("Williams-Hopkins Text Messages").

31. Representative examples of the Williams-Hopkins Text Messages are reproduced below:

> DollarConnect: Mildred, here is your secure application. Apply for a loan at any time http://safexyz.com/105/ xtCssw Reply HELP for Help, STOP to Stop

> DollarConnect: Did you get the cash you need? Apply for up to $1000 using your link http://safexyz.com/106/ xtCssw Reply HELP for Help, STOP to Stop

32. Ms. Williams-Hopkins did not give consent to Defendants to send the Williams-Hopkins Text Messages by text or any other means.

33. Certain of the Williams-Hopkins Text Messages were received by Ms. Williams-Hopkins while she was at work and caused Ms. Williams-Hopkins to stop her work activity to check her phone when the text was received.

34. Some of the Williams-Hopkins Text Messages were received while Ms. Williams-Hopkins was attending to her personal affairs and caused her to be diverted from her activity to check her phone when the text was received.

35. The Williams-Hopkins Text Messages were unsolicited advertisements for predatory loans on behalf of the Unknown Lenders.

36. On July 1, 2018, Ms. Williams-Hopkins replied to a text message from Defendants with the instruction to stop sending her texts ("First Stop Request").

37. On July 2, 2019, Ms. Williams-Hopkins replied to a text message from Defendants with the instruction to stop sending her texts ("Second Stop Request").

38. Despite confirming the First Stop Request and Second Stop Requests (collectively, "Stop Requests") from Ms. Williams-Hopkins, Defendants caused additional promotional text messages to be sent to Ms. Williams-Hopkins.

## CLASS REPRESENTATION ALLEGATIONS

### *Statement of Maintainable Class Claims*

39. This case is maintainable on a class-wide basis pursuant to Rule 23(b)(2) and (b)(3), Federal Rules of Civil Procedure.

### *Identification of Common Questions of Law or Fact*

40. Pursuant to Rule 23(a)(2), Federal Rules of Civil Procedure, there are common questions of law and fact common to the Class, which common issues predominate over any issues involving owing individual class members.

41. There are questions of law or fact common to the Classes, which common issues predominate over any issues involving only individual class members. Factual and/or legal issues common to each class member include:

    a. Whether Defendants' conduct is governed by the TCPA.

    b. Whether the text message advertisements sent by Defendants were sent to the Class Representative and the members of the class without consent.

    c. Whether the Class Representative and class members are entitled to treble damages based upon the willfulness of Defendants' conduct.

    d. Whether Defendants should be enjoined from engaging in such conduct in the future.

### *Allegations of Typicality*

42. Pursuant to Rule 23(a)(3), Federal Rules of Civil Procedure, the claims of Ms. Williams-Hopkins as Class Representative are typical of those classes that she seeks to represent in that Ms. Williams-Hopkins was subject to the unlawful text messaging described above. As such, the claim of Ms. Williams-Hopkins is identical to those of the class members.

### *Allegations of Numerosity*

43. Based on available industry data, SMS message campaigns typically involve thousands if not hundreds of thousands of text messages to individuals.

44. Based on the foregoing, the prospective class numbers are at least in the thousands if not tens of thousands and are so numerous that joinder of all members would be impractical. The exact size of the proposed class and the identity of the members thereof are readily ascertainable from the business records of Defendants. Although the precise number of class members is presently unknown and can only be determined by discovery, the proposed class size satisfied the requirements of Rule 23(a)(1), Federal Rules of Civil Procedure, as, upon information and belief, Defendants have made unlawful text messages to more than one hundred (100) persons.

### *Definition of Class*

45.     Pursuant to Rule 23, Federal Rules of Civil Procedure, Ms. Williams-Hopkins proposes to represent the following classes:

(a)   **Unauthorized Text Class**

   i.     All persons residing in the territorial United States;

   ii.    Who subscribe to a cellular telephone;

   iii.   Who were sent a text message advertisement by Defendants by the use of an automated telephone dialing system.

(b)   **Stop Request Subclass**

   i.     All persons residing in the territorial United States;

   ii.    Who subscribe to a cellular telephone;

   iii.   Who were sent a text message advertisement by Defendants by the use of an automated telephone dialing system after the person sent a "stop sending" text message or Stop Request.

46.     Excluded from the Classes are Defendants, their legal representatives, assigns, and successors, and any entity in which the Defendants have a controlling interest.   Also excluded from the Classes is the Judge to whom this case is assigned, the Judge's immediate family, and Plaintiff's counsel and their employees. Plaintiff reserves the right to amend the above-stated class definitions based upon facts learned in discovery.

### *Adequacy of Class Representative*

47.     Pursuant to Rule 23(a)(4), Federal Rules of Civil Procedure, the Class Representative will fairly and adequately protect and represent the interest of each class member. The Class Representative has retained counsel with substantial experience in handling class actions

in federal and state court.

48.     The Class Representative has no conflicts of interest which would interfere with her ability to represent the interest of the class members.

### *Appropriateness of Hybrid Class Treatment Under Rule 23 (b)(2) and (3)*

49.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to the individual class members against DollarConnect.

50.     The Class Representative is represented by counsel competent and experienced in both consumer protection and class action litigation.

51.     Members of the proposed class who have an interest in individually controlling the prosecution of separate claims against Defendants will not be prejudiced by this action. Each member of the proposed class will be identified through discovery from Defendants and will be notified and given an opportunity to opt out of their respective class(es).

52.     The Class Representative does not presently know the nature and extent of any pending litigation to which a member of the proposed class is a party and in which any question of law or fact controverted in the present action is to be adjudicated. The Class Representative will identify any such pending litigation by discovery from Defendants.

53.     This Court is an appropriate forum for the present action in that Defendants do business in this District.

54.     Certification of a class under Rule 23 (b)(3), Federal Rules of Civil Procedure is

also appropriate in that:

      (a)    The questions of law or fact common to the members of the class predominate over any questions affecting an individual class member; and

      (b)    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

55.    The Class Representative requests certification of a "hybrid" class for monetary damages under Rule 23 (b)(3) and for equitable relief under Rule 23 (b)(2), Federal Rules of Civil Procedure. *See, Penson v. Terminal Transport Co., Inc.,* 634 F.2d 989, 994 (5th Cir. 1981); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004).

56.    There are no difficulties likely to be encountered by the Court in the management of this proposed class action.

57.    The Class Representative's counsel are entitled to a reasonable fee from the class members or from a common fund for the handling of this action.

### COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT ON BEHALF OF UNAUTHORIZED TEXT CLASS

58.    This is an action for violation of the Telephone Consumer Protection Act.

59.    Plaintiff reincorporates Paragraphs 1 through 54 above as if set forth here in full.

60.    Defendants sent unwanted text messages to Plaintiff and the members of the Unauthorized Text Class as an advertisement using an automatic telephone dialing system.

61.    The text messages were made without the prior express written consent of all parties.

62.    The aforesaid texts violate the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and its regulations, at 47 C.F.R. § 64.1200(a)(2).

63.    Defendants have negligently violated the TCPA, 47 U.S.C. § 227 *et seq.*, in relation

to the Class Representative and class members.

64. As a result of Defendants' negligent violations of the TCPA, Ms. Williams-Hopkins may recover statutory damages of $500.00 for each and every message of the statute.

65. Alternatively, Defendants have knowingly or willfully violated the TCPA in relation to the Class Representative and class members.

66. As a result of Defendants' willful violations of the TCPA, the Class Representative and class members may recover statutory damages of up to $1,500.00 per call in violation of the statute.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Unauthorized Text Class, and against Defendants for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages of $500.00 per call for negligent violations of the TCPA;

(c) Treble damages of $1,500.00 per call for willful violations of the TCPA;

(d) An injunction requiring Defendants to cease all communications in violation of the TCPA;

(e) Reasonable attorney's fees and costs; and

(f) Such further relief as this Court may deem appropriate.

### COUNT II - WILLFUL OR KNOWING VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT ON BEHALF OF STOP REQUEST CLASS

67. This is an action for violation of the Telephone Consumer Protection Act.

68. Plaintiff reincorporates Paragraphs 1 through 54 above as if set forth here in full.

69. Defendants willfully or knowingly sent unwanted text messages to Plaintiff and the members of the Stop Request Class as an advertisement using an automatic telephone dialing system.

70. The text messages were made without the prior express written consent of all parties.

71. The aforesaid calls violate the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and its regulations, at 47 C.F.R. § 64.1200(a)(2).

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Stop Request Class, and against Defendants for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages of $1,500 per call for each willful or knowing violation of the TCPA;

(c) An injunction requiring Defendants to cease all communications in violation of the TCPA;

(d) Reasonable attorney's fees and costs; and

## DEMAND FOR JURY TRIAL

Plaintiff, Rosa M. Williams-Hopkins, an individual, demands a trial by jury of all issues so triable.

## CERTIFICATION PURSUANT TO RULE 11.2

Pursuant to Rule 11.2, I hereby certify, to the best of my knowledge, that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

Respectfully,

*s/Yongmoon Kim*
Yongmoon Kim, Esq.
KIM LAW FIRM LLC

Dated: February 16, 2021